IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

NO. 7:23-CR-74-FL

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | |
| | ) | ORDER |
| CHARLES EDWARD MCRAE, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court on defendant's motion to suppress (DE 22). Pursuant to 28 U.S.C. § 636(b)(1)(B) and Federal Rule of Criminal Procedure 59(b), United States Magistrate Judge Brian S. Meyers entered memorandum and recommendation, wherein it is recommended that defendant's motion be denied (the "M&R") (DE 37). Petitioner filed objections to the M&R. The issues raised are ripe for ruling. For the following reasons, the court adopts the M&R and denies defendant's motion.

## BACKGROUND

The court incorporates herein the facts and background as more particularly set forth in the M&R, including embedded footnotes:

> On August 22, 2018, in the case of United States v. McRae, 5:18-CR-334-FL-1, defendant was charged in a one-count indictment (McRae, 5:18-CR-334-FL-1, DE 1) with possession of a firearm and ammunition by a convicted felon in violation of 18 U.S.C. §§ 922(g) and 924. Defendant pleaded guilty to the sole count of the indictment, (McRae, 5:18-CR-334-FL-1, DE 23), and on September 12, 2019, was sentenced by [the undersigned] to 24 months' imprisonment, followed by 36 months' supervised release, (McRae, 5:18-CR-334-FL-1, DE 44). Defendant began his term of supervised release on July 12, 2020. (McRae, 5:18-CR-334-FL-1, DE 63, 83).
>
> On September 21, 2022, defendant was subject to a traffic stop by the Fayetteville Police Department ("FPD"), during which a warrantless search was conducted and a firearm, among other items, was found. As relevant to the discussion of the instant

motion herein, the traffic stop and investigation involved three FPD officers – Joshua Walcott ("Walcott"); William Miesch ("Miesch"); and Tyler Newman, who is also assigned as a Task Force Officer ("TFO") with the Federal Bureau of Investigation ("FBI") ("Newman").

On September 28, 2022, the government filed a motion for revocation of supervised release (McRae, 5:18-CR-334-FL-1, DE 63), alleging that on "September 21, 2022, defendant committed the state offenses of Felony Possession With Intent to Manufacture Sell and Deliver Marijuana, Felony Maintaining a Vehicle, Dwelling, Place for a Controlled Substance (22CR301034), and Possession of Firearm by Felon (22CR301036), in Cumberland County, North Carolina."

On July 19, 2023, defendant was charged in the instant case in a one-count indictment with possession of a firearm by a convicted felon in violation of 18 U.S.C. §§ 922(g) and 924, on or about September 21, 2022. The government subsequently filed an amended motion for revocation of supervised release (McRae, 5:18-CR-334-FL-1, DE 83) on July 28, 2023, to include defendant's July 19, 2023 federal indictment, and noted that "[t]hese federal charges are the result of the aforementioned state charges."

On August 1, 2023, defendant appeared before [the undersigned] for his revocation hearing in McRae, 5:18-CR-334-FL-1. Among the witnesses called by the government at the revocation hearing were Officer Walcott and TFO Newman. (McRae, 5:18-CR-334-FL-1, DE 88).[1] The court revoked defendant's term of supervised release and he was sentenced to a term of 12 months in custody. (McRae, 5:18-CR-334-FL-1, DE 86).

On December 28, 2023, defendant filed the instant motion to suppress. The motion seeks suppression of the evidence obtained as the result of a warrantless search that occurred during the September 21, 2022 traffic stop of defendant in Fayetteville. (See Mot. Suppress (DE 22) 1). Specifically, the motion seeks to suppress the "evidence, including any and all statements made subsequent to being taken into custody" or that were otherwise incriminating. (Id. at 2, 13). The government filed a response in opposition to the motion.

The [magistrate judge] set a hearing on the motion to suppress to take place on February 15, 2024. On February 13, 2024, the government filed a motion to continue citing scheduling conflicts of necessary government witnesses. Defendant filed a response in opposition. On February 14, 2024, the [magistrate judge] held a telephonic hearing on the motion to continue, and heard argument from counsel for the government and counsel for defendant. For the reasons stated on the record during the telephonic hearing, the [magistrate judge] granted a one-day continuance and reset the suppression hearing for February 16, 2024.

---

[1] The transcript of the supervised release hearing was admitted as a defense exhibit at the February 28, 2024 suppression hearing before the [magistrate judge].

On February 15, 2024, the government filed a motion seeking to continue the suppression hearing for an additional two-weeks, and noted defendant's opposition. In the motion, the government provided that during preparation for the hearing, counsel for the government learned of materials in the personnel files of the FPD regarding an anticipated witness that, pursuant to state law, FPD could not provide without a court order. (Mot. Continue (DE 29) 1). Further, the government stated that it believed "copies of the materials need to be obtained, reviewed, and produced to defense counsel prior to any suppression hearing in order for the Government to comply with its discovery obligations." (Id.)

On February 16, 2024, the [magistrate judge] held an in-person hearing on the government's opposed motion to continue, at which counsel for the government, counsel for defendant, and defendant were all present. The [magistrate judge] heard argument from both sides, during which the government proffered that it believed the records to be obtained from FPD would be discoverable and could be potential impeachment material regarding Officer Walcott, whom the government intended to call as a witness during the suppression hearing. For the reasons stated on the record in open court, including to allow time for the government to obtain and provide the records to defendant and for defendant to review the same, the [magistrate judge] granted the motion to continue and reset the suppression hearing for February 28, 2024.

The [magistrate judge] conducted an evidentiary hearing on defendant's motion to suppress on February 28, 2024. The [magistrate judge] first addressed the discovery matters raised during the February 16, 2024 hearing regarding the government's provision of FPD records to the defense. The government confirmed that it had received the anticipated records from the FPD, including a recorded statement by Officer Walcott, and had produced everything received to counsel for defendant. Counsel for defendant confirmed that she had received the discovery at issue, containing potential impeachment information, and that she had sufficient time to review the material prior to the suppression hearing. The government proffered that it did not anticipate any additional related discovery, as the FPD had resolved the matter involving Officer Walcott – "sustain[ing] . . . some of the violations." Suppression Hearing Audio (09:14:18).[2] As a result, Officer Walcott received a suspension, but remained employed as a police officer with the FPD. (Id.).

The [magistrate judge] then proceeded with the suppression hearing. The government presented the testimony of the following law enforcement officers with the FPD: 1) Officer Walcott; 2) Officer Miesch; and 3) TFO Newman. Defendant requested sequestration of the officers without objection by the government, which the [magistrate judge] granted.

---

[2] The suppression hearing on February 28, 2024, was audio recorded. The [magistrate judge's courtroom's] internal audio playback system includes a clock indicating the time of day the audio was recorded. The citations to the suppression hearing audio [herein] indicate the approximate time on this clock during the referenced testimony.

3

The government offered four exhibits without objection, which the [magistrate judge] admitted into evidence, as follows:

1) 1-page FBI form entitled "Advice of Rights," dated October 20, 2022 ("Gov Ex. 1");

2) DVD ("Gov. Ex. 2")[3] containing seven individual video files ("Gov. Ex. 2 – '*file name*' ") with the following file names:[4]

   i) *082_Clip1.mp4* ("Gov. Ex. 2 – 082_Clip1") (video clip from Officer Walcott's body camera during the September 21, 2022 traffic stop at issue);

   ii) *082_Clip2.mp4* (Gov. Ex. 2 – 082_Clip2") (video clip from Officer Walcott's body camera during the September 21, 2022 traffic stop at issue);

   iii) *083_Clip1.mp4* ("Gov. Ex. 2 – 083–Clip 1") (video clip from officer Miesch's body camera during the September 21, 2022 traffic stop at issue);

   iv) *083_Clip2.mp4* ("Gov. Ex. 2 – 083_Clip2") (video clip from Officer Miesch's body camera during the September 21, 2022 traffic stop at issue);

   v) *083–Clip3.mp4* ("Gov. Ex. 2 – 083–Clip3") (video clip from Officer Miesch's body camera during the September 21, 2022 traffic stop at issue);

   vi) *Bates344_Clip4.mp4* ("Gov. Ex. 2 – Bates344–Clip") (video clip from Officer Miesch's recorded interview of defendant in the interrogation room at the FPD station on September 21, 2022); and

   vii) *084–Clip.mp4* ("Gov. Ex. 2 – 084–Clip1) (video clip from TFO Newman's recorded interview of defendant in the interrogation room at the FPD station on October 20, 2022);

---

[3] Pursuant to the [magistrate judge's] directive that the parties provide potential exhibits in advance of the evidentiary hearing (Text Order, dated February 14, 2024), the government filed a hearing exhibit list with copies of the potential exhibits (DE 28). Included was a potential exhibit marked "Government Exhibit 5", described as "DVD – Full videos," (DE 28-1), containing the full videos from which the clips on Gov't Exhibit 2 were taken. The government did not offer Government Exhibit 5 during the hearing. As noted on the record during the hearing, the [magistrate judge], therefore, did not consider the contents of this DVD in making the recommendation herein.

[4] All citations herein to video clips are to the individual clips as submitted to the court and to the time stamp in hours, minutes, and seconds (*e.g.*, "00:00:00") appearing in the player on which the [magistrate judge] viewed the video, i.e., VLC Media Player.

4

3) 1-page FPD form entitled "General Adult Rights Form," dated September 21, 2022 ("Gov. Ex. 3"); and

4) FPD warning ticker for a window tine violation, dated September 21, 2022, issued to defendant ("Gov. Ex. 4").

Defendant presented no testimony, but offered two exhibits[5] without objection, which the [magistrate judge] admitted into evidence:

1) A photograph of fourteen small bags of marijuana found in defendant's vehicle during law enforcement's search on September 21, 2022 ("Def. Ex. 3"); and

2) The transcript of defendant's August 1, 2023 supervised release revocation hearing before [the undersigned] in case number 5:18-cr-334 (Def. Ex. 3").

(M&R (DE 37) 1–6) (all footnotes in original) (citations and exhibit abbreviations altered).

Defendant timely filed objections to the M&R June 10, 2024 (Objs. (DE 41)).

## COURT'S DISCUSSION

A. Standard of Review

The district court reviews de novo those portions of a magistrate judge's M&R to which specific objections are filed. 28 U.S.C. § 636(b). The court does not perform a de novo review where a party makes only "general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations." Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982). Absent a specific and timely filed objection, the court reviews only for "clear error," and need not give any explanation for adopting the M&R. Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005); Camby v. Davis, 718 F.2d 198, 200 (4th Cir. 1983). Upon careful review of the record, "the court may accept, reject, or

---

[5] During cross examination of Officer Miesch, counsel for defendant sought to introduce a video clip from the body camera video of Officer Miesch. However, this portion of the video was already in evidence at Gov. Ex. 2 – 083_Clip3, beginning at 00:01:58, and counsel for defendant therefore agreed to note the portion of the clip for the record rather than introducing a duplicative copy.

modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

B.  Analysis

Defendant raises numerous objections to the M&R. The court disagrees with each.

1)  Factual Objections

Defendant first presents a trio of objections, labelled as "factual objections," to the magistrate judge's witness credibility findings and to certain characterizations of evidence in the M&R. (See Objs. 1–3).

First, defendant objects that the magistrate judge found Officer Walcott a credible witness, on grounds that he gave conflicting testimony on two occasions. (See Objs. 1–2). The M&R deemed all three government witnesses credible because they had good recall of events, answered questions in a straightforward and non-adversarial manner, and presented testimony consistent with the record evidence. (M&R 26). Defendant points to Walcott's testimony at defendant's revocation hearing that defendant possessed only one cell phone during the traffic stop, whereas he testified at the suppression hearing that defendant possessed two. (See Objs. 1–2; M&R 27). Walcott acknowledged this inconsistency at the suppression hearing. Defendant also gestures to Walcott's testimony that he could not tell whether the bags in defendant's car were storebought or commercial, given his further testimony that people often buy the types of bags found in defendant's car and fill them with marijuana found elsewhere. (See Objs. 1–2; M&R 27).

The magistrate judge noted both of these inconsistencies, and nonetheless found Walcott credible based on his demeanor and the other record evidence. The court has reviewed the relevant testimony and cannot conclude that the magistrate judge's credibility assessment was incorrect. See Saddler v. United States, No. 5:21-cv-16-FL, 2022 WL 16278245, at *2–3 (E.D.N.C. Nov. 4,

2022) (rejecting challenge to M&R's witness credibility determinations after independent review of testimony); United States v. Northington, No. 7:11-cr-41-FL, 2012 WL 333764, at *3 (E.D.N.C. Jan. 31, 2012) (similar).

Second, defendant objects to the M&R's characterization of the packs of marijuana found during the traffic stop as "designer baggies," as opposed to "retail marijuana[.]" (See Objs. 2). Defendant contends that this difference affects the probable cause analysis, because "retail" marijuana is commercially bought online, sometimes from states in which marijuana is legal. (See id. 2–3). The court is unable to discern the relevance of the distinction defendant attempts to draw. Marijuana is legal in many states, but it remains illegal in North Carolina. N.C. Gen. Stat. §§ 90-94(b)(1), 90-95. Whether or not the marijuana here came from a state in which it is legal is irrelevant to the probable cause analysis.

Third, defendant objects to the M&R's conclusion that defendant consented to a search of his trunk by "gestur[ing]" and telling Walcott how to open it. (Objs. 3). Consent to search is judged through an objective standard, and may be supplied by non-verbal conduct. United States v. Jones, 356 F.3d 529, 533–34 (4th Cir. 2004); see also, e.g., United States v. Carter, 378 F.3d 584, 587 (6th Cir. 2004). Defendant's actions here reasonably communicated consent to Walcott to search the trunk. See United States v. Smith, 30 F.3d 568, 570–71 (4th Cir. 1994) (ruling search consensual when defendant unlocked car door in response to request); see also United States v. Griffin, 530 F.2d 739, 743 (7th Cir. 1976) (same when defendant moved aside from apartment threshold in response to request to search).

The court concludes that none of defendant's "factual" objections succeeds.

7

Case 7:23-cr-00074-FL-BM   Document 43   Filed 08/05/24   Page 7 of 16

2) Legal Objections

Defendant next advances two legal objections, on the M&R's application of the automobile warrant exception and to its conclusions on several issues involving Miranda warnings.

a. Automobile Exception

Defendant first argues that officers searched his trunk, and a closed backpack therein, without probable cause.

A "well-established" exception to the Fourth Amendment's warrant requirement is the so-called automobile exception. United States v. Kelly, 592 F.3d 586, 589–90 (4th Cir. 2010). If a car is mobile and probable cause that it contains contraband exists, police may search it without a warrant, including "every part of the vehicle and its contents that may conceal the object of the search." Id.

Defendant contends that the officers lacked probable cause to search his car because they allowed an acquaintance of defendant to drive away with the car after the search, including with some, though not all, of the suspicious items still within. (See Objs. 4–6). The court agrees with defendant's suggestion that the officers' behavior in this respect was unusual. But defendant cites no authority for the proposition that such post-search actions affect the formulation of the antecedent probable cause. Cf. Devenpeck v. Alford, 543 U.S. 146, 152 (2004) ("[w]hether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest" (emphasis added)). The court cannot conclude that this decision destroyed probable cause.

Defendant's primary argument on probable cause is that the numerous circumstances catalogued in the M&R, even together, did not create probable cause to search the trunk or the closed backpack. The court disagrees.

8

Probable cause "depends on the totality of the circumstances," does not require "an actual showing of [criminal] activity," and is "not a high bar." District of Columbia v. Wesby, 583 U.S. 48, 57 (2018). The M&R recounted numerous circumstances here that supported probable cause: 1) defendant was stopped in a high crime area known for narcotics and violent crime; 2) defendant's vehicle emitted the scent of marijuana; 3) defendant admitted to smoking marijuana before the traffic stop; 4) Walcott recognized defendant as an individual known for drug and weapons charges; 5) Walcott found a digital scale and two cell phones while searching the vehicle; and 6) Walcott found 14 baggies of marijuana in the car. These circumstances all support probable cause. See United States v. Bumpers, 705 F.3d 168, 172–73 (4th Cir. 2013) (high crime area); United States v. Humphries, 372 F.3d 653, 658 (4th Cir. 2004) (mere scent of marijuana); United States v. Bynum, 293 F.3d 192, 197 (4th Cir. 2002) (suspect's criminal record); United States v. Hill, 240 F. App'x 563, 565 (4th Cir. 2007) (digital scale); United States v. Bolling, No. 2:21-00087, 2023 WL 5616188, at *8 (S.D.W. Va. Aug. 30, 2023) (collecting cases on suspicious cell phones);

Defendant's main contention is that these factors did not, "either individually or taken together," establish probable cause to search the trunk. (Objs. 7). The court disagrees: the officers here had numerous indicia to support probable cause. The magistrate judge correctly determined that this case aligns squarely with United States v. Pankey, No. 3:16cr79, 2016 WL 6647939, at *3–5 (E.D. Va. Nov. 9, 2016), aff'd, 710 F. App'x 615 (4th Cir. 2018). There, the scent of marijuana supported probable cause with several other indicia, such as the discovery of marijuana in the passenger compartment, the suspect's possession of multiple cell phones, and that the stop took place on a highway known as a drug trafficking artery. See id. Other cases have upheld searches of trunks based on the scent of marijuana combined with other indicia, even those not

specifically present here.  See United States v. Carter, 300 F.3d 415, 422 (4th Cir. 2002) (scent combined with drug detection dog's alert); see also, e.g., United States v. Kizart, 967 F.3d 693, 696–97 (7th Cir. 2020) (scent of marijuana combined with strange behavior by driver).  Given these holdings, the court concludes that probable cause existed to search the trunk.

Defendant resists this conclusion on grounds that none of these factors alone was sufficient to create probable cause, for example citing Illinois v. Wardlow, 528 U.S. 119, 124 (2000) for the proposition that presence in a high crime area cannot generate probable cause by itself.  (See Objs. 7).  The court agrees that generally, single factors cannot create probable cause alone.  See Wardlow, 528 U.S. at 124 (noting that presence in a high crime area cannot create even reasonable suspicion alone).  But the Supreme Court has also instructed that factors underlying probable cause cannot be evaluated in isolation, but that courts must consider "the whole picture," which "is often greater than the sum of its parts[.]"  Wesby, 583 U.S. at 60–61.  Under this approach, and accounting for all the factors noted above together, the court concludes that probable cause to search the trunk existed.  The search was therefore proper under the automobile exception.

        b)       Miranda

Finally, defendant advances an array of objections to the M&R's various rulings on whether police must have given defendant warnings under Miranda v. Arizona, 384 U.S. 436, 479 (1966).

The M&R thoroughly canvassed legal doctrine surrounding Miranda.  (M&R 22–25).  As relevant here, certain warnings, enumerated in Miranda, must be given to a suspect once a custodial interrogation begins, otherwise the prosecution may not introduce the suspect's responsive statements during its case-in-chief at trial.  See United States v. Leggette, 57 F.4th 406, 410 (4th Cir. 2023).  Such warnings are not required, however, if a suspect is not "in custody" within

Miranda's meaning; such custody exists when, under the totality of the circumstances, a suspect's freedom of movement is curtailed to a degree associated with formal arrest. Id. This inquiry involves two questions: first, whether a reasonable person would have felt not free to terminate the interrogation and leave; if yes, whether the prevailing environment presented the same inherently coercive pressures as "the type of station house questioning at issue in Miranda." Id. Traffic stops generally are not custodial. Id. at 410–11.

Next, statements need not be suppressed if they are spontaneous or not in response to police questioning or conduct the police know is likely to produce some incriminating response. Rhode Island v. Innis, 446 U.S. 291, 301–02 (1980).

Last, a suspect may waive his or her Miranda rights, so long as such waiver was voluntary and not the product of coercion. See United States v. Cristobal, 293 F.3d 134, 140 (4th Cir. 2002). The critical inquiry is whether the defendant's will was overborne, or his capacity for self-determination critically impaired. Id. A waiver must also be knowing and intelligent, in that the suspect had full awareness of the nature of the right being abandoned and the consequences thereof. See Berghuis v. Thompkins, 560 U.S. 370, 382–83 (2010). The government bears the burden of proving voluntariness by a preponderance of the evidence. United States v. Robinson, 404 F.3d 850, 860 (4th Cir. 2005).

The court now turns to the three distinct episodes of questioning at issue here.

### i) Pre-Handcuffing Questioning

Defendant argues that he was in custody during the traffic stop before he was handcuffed, so that Miranda warnings were required. The court disagrees.

To begin, a suspect may not be free to leave but nonetheless remain outside of custody for Miranda purposes. See Leggette, 57 F.4th at 411. Instead, the inquiry involves the totality of the

circumstances, such as the number of officers present, the number of questions asked, the officers' demeanor, and whether the officers drew their weapons at, physically restrained, or threatened the suspect. Id. at 411–12 (discussing all these factors).

Defendant highlights that the officers were uniformed and armed, that one officer frisked defendant, and that another did not permit defendant to leave the scene. (See Objs. 8). But these factors are not enough to convert the relevant events into a custodial interrogation for which Miranda warnings were required. First, as noted, traffic stops are generally not custodial, and the mere fact that a suspect is not free to leave does automatically convert questioning into a Miranda interrogation requiring warnings. See id. at 411. Second, the officers possessed their service weapons, but did not draw or brandish them. (See M&R 32); Leggette, 57 F.4th at 411–14 (noting that officer possessed service weapon but did not draw it, and ultimately deeming traffic stop non-custodial). Finally, one officer's frisking of defendant did not convert the scene into a custodial interrogation. See Leggette, 57 F.4th at 411 (noting that officer did not touch suspect "beyond the protective frisk" (emphasis added)).

The court acknowledges that these factors have some weight, albeit less than defendant argues. But in contrast are that only two officers were present, that neither drew his weapon, that interactions between them were "agreeable," that the stop occurred in public, and that the officers never touched defendant beyond the initial frisk before he was handcuffed. (See M&R 32); Leggette, 57 F.4th at 411–13. The court therefore agrees with the magistrate judge that defendant was not in custody prior to being handcuffed, and that Miranda warnings were not required before that point.

ii) Post-Handcuffing Questioning

Defendant next argues that statements he made after being handcuffed were in response to police questioning and made without <u>Miranda</u> warnings, requiring suppression. The court disagrees.

As a threshold matter, the government has conceded before the magistrate judge, and again before this court, that three specific statements clearly elicited by the officers after defendant's handcuffing were obtained in violation of <u>Miranda</u> and so inadmissible in its case-in-chief. (See Gov. Br. (DE 42) 13 n.2). The court therefore adopts without further discussion that part of the M&R where the magistrate judge determined that suppression of those statements was conceded.[6] (M&R 30–31).

Defendant also contends, however, that other statements made after he was handcuffed, both to the officers and over the phone, were responsive to police questioning and so must be suppressed. The court cannot agree.

As noted above, spontaneous statements, or those not elicited by police questioning or conduct, need not be suppressed under <u>Miranda</u> and its line. <u>Innis</u>, 446 U.S. at 301–02. Defendant spontaneously volunteered several statements during and after his handcuffing in response to no questioning or conduct by the police. These statements therefore should not be suppressed. (See M&R 12–14); <u>United States v. Ivey</u>, 60 F.4th 99, 112 (4th Cir. 2023) (holding that volunteered statements are not barred by <u>Miranda</u>, "even if the defendant is in custody [at the time]").

Defendant argues for suppression on the theory that the officers gave defendant his cell phone not at defendant's own request, but rather underhandedly to trick him into making

---

[6] The government remains free to use these statements for impeachment purposes. See <u>Harris v. New York</u>, 401 U.S. 222, 223–26 (1971).

13

incriminating statements.  (See Objs. 10).  The court again cannot agree.  The magistrate judge received testimony that defendant requested access to his cell phone, and then made at least five phone calls unprompted by the officers and with them clearly in earshot.  (See M&R 12–13).  Defendant makes no supported argument that he made these phone calls at police instigation in any way.  These statements, related in full in the second full paragraph on page 12 of the M&R, in the first and second full paragraphs of page 13, and in the first full paragraph of page 14, shall not be suppressed.[7]

### iii) Post-Warning Questioning

Last, defendant argues he did not effectively waive his Miranda rights during interrogation by Newman, requiring suppression of all statements made during their exchange.  (Objs. 10–11).  Again, the court disagrees.

To determine the voluntariness of a Miranda waiver, the court examines the totality of the circumstance surrounding the interrogation, including the suspect's intelligence and education, his age and familiarity with the criminal justice system, and the proximity of the waiver to the giving of Miranda warnings.  Correll v. Thompson, 63 F.3d 1279, 1288 (4th Cir. 1995).

The magistrate judge examined several circumstances surrounding defendant's waiver here, noting that Newman "calmly and clearly" presented Miranda warnings, did not attempt to threaten or coerce defendant into waiver, that defendant had a written copy of the waiver form and confirmed he had no questions, and that defendant had a high school equivalency diploma and has had significant interaction with the criminal justice system.  (M&R 35–36).  On these

---

[7] The second full paragraph of page 12 begins "Officer Walcott opened[,]" the first and second full paragraphs on page 13 begin "Defendant then made" and "during a second call[,]" respectively, and the first full paragraph of page 14 begins "Officer Walcott testified[.]"  (See M&R 12–14).

circumstances, the magistrate judge concluded that defendant's waiver was knowing and voluntary.

Defendant objects to this conclusion on grounds that the magistrate judge placed too much weight on defendant's history with the criminal justice system, and that the officers pushed for cooperation and misrepresented defendant's possible sentencing exposure. (See Objs. 10–11).

First, the magistrate judge did not place undue weight on defendant's criminal history. Miranda waivers are assessed under the totality of the circumstances, and a defendant's history with the criminal justice system is but one factor, joined in this case by the numerous others noted above supporting a conclusion of voluntary waiver. See Correll, 63 F.3d at 1288 (holding waiver voluntary for 24-year old defendant with IQ of 68 but with extensive history with criminal justice system); see also, e.g., Cristobal, 293 F.3d at 141 (holding waiver by seriously wounded suspect intoxicated on morphine following emergency medical treatment voluntary). Together, these numerous factors lead to the conclusion that defendant's waiver was knowing and voluntary.

Second, the officers did not overbear defendant with promises of leniency or with intimidation about his possible sentencing exposure. Police officers may validly make representations to a defendant, or may discuss cooperation, without rendering the resulting confession involuntary. See United States v. Shears, 762 F.2d 397, 401–02 (4th Cir. 1985); United States v. Leonard, No. 97-4266, 1998 WL 163735, at *5 (4th Cir. Apr. 6, 1998) (collecting cases). Defendant points merely to Walcott's admission at the suppression hearing that Walcott told defendant he was trying to help defendant by getting him to talk, and that Newman discussed the "career offender" sentencing enhancement with defendant. (See Objs. 11 n.2). These admonishments are not improper intimidation tactics but rather align with the cases upholding police encouragement of cooperation. See Shears, 762 F.3d at 401–02; United States v. Lewis,

15

466 F. App'x 170, 173 (4th Cir. 2012); see also, e.g., United States v. Cardenas, 410 F.3d 287, 295 (5th Cir. 2005).[8] The government has thus met its burden to demonstrate voluntariness. See Robinson, 404 F.3d at 860.

In sum, the magistrate judge properly analyzed both the waiver issue and the other Miranda questions presented in defendant's motion.

Finally, defendant argues that the administration of Miranda warnings did not dispel the taint of the allegedly unlawful search of defendant's trunk and backpack. (Objs. 11). The court has determined, however, that such search was lawful, so no attenuation analysis is necessary.

The court has examined the rest of the M&R, to which defendant does not object, for clear error in light of the underlying record and briefing. See Diamond, 416 F.3d at 315. Finding none, the court adopts the remainder of the M&R.

## CONCLUSION

Based on the foregoing, the court DENIES defendant's motion to suppress (DE 22).

SO ORDERED, this the 5th day of August, 2024.

_____
LOUISE W. FLANAGAN
United States District Judge

---

[8] Shears noted an exception to this rule: that a confession may be coerced if the police promise to drop all charges in exchange for cooperation, such promise was not fulfilled, and the promise was the determinative factor leading to the confession. See Shears, 762 F.3d at 402 n.5. Defendant makes no argument that this exception applies here.